E. HELLER & BROTHER, Respondent, *v.* CONTINENTAL MILLS,
Appellant.

First Department, April 1, 1921.

**Sales — action for breach of contract to sell — failure of buyer to
pay installments as they fell due constitutes defense for refusal
to make further deliveries — waiver of time as to payment of
installments — waiver of prior breaches in time of payment by
making subsequent delivery — when seller not bound to give
notice after default in payment fixing future time for payment.**

It is a defense to an action by a buyer against the seller of goods to be
delivered in installments and to be paid for in the same way, based on
the refusal of the seller to deliver a portion of the goods, that the buyer
failed to pay for the installments delivered as they fell due and that at
the time of the seller's refusal to deliver further installments, payment
for the installments delivered had not been made, and the seller was not
bound to give notice to the buyer of its reasons for failure to continue
deliveries.

The acceptance by the seller of payment for the first installment two days
after it was due, and its delivery of the third installment on the next
day, and the delivery of the fourth installment when the plaintiff was
three days in default with respect to payment of the second installment
did not, as a matter of law, constitute a waiver of the provisions of the
contract with respect to the time for the payment of all subsequent
installments.

The seller did thereby waive the breaches that had occurred prior to the
delivery of the third and fourth installments and no longer had a right
arbitrarily to terminate the contract on account thereof.

The seller was not bound to give notice to the buyer, after his default in
paying installments when due, fixing a time for payment and notifying
it that the contract would be canceled if payments were not so made,
since the seller did not plead rescission but merely justification under sub-
division 2 of section 126 of the Personal Property Law for not proceeding
further.

On all the evidence, *held*, that a question of fact was presented as to whether
plaintiff's breaches of the contract were so material that the defendant
was justified in refusing to proceed further with the contract.

SMITH, J., and CLARKE, P. J., dissent, with opinion.

APPEAL by the defendant, Continental Mills, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered
in the office of the clerk of the county of New York on the
10th day of March, 1920, upon the general verdict of a jury

rendered by direction of the court upon stipulation of the parties after a special verdict had been rendered by the jury by direction of the court, and also from an order entered in said clerk's office on the same day granting plaintiff's motion for the direction of a general verdict in favor of the plaintiff and against the defendant and directing the clerk to enter judgment accordingly.

*Francis X. Carmody* of counsel [*Peale & McLaughlin,* attorneys], for the appellant.

*James Garfield Moses,* for the respondent.

LAUGHLIN, J.:

I am of opinion that the evidence presented a question of fact with respect to whether the plaintiff's breach of the contract in failing to make installment payments when due was so material as to justify the defendant in refusing to proceed further, which was properly submitted to the jury, and that the court erred in setting aside the special and general verdict in favor of the defendant thereon and in directing a verdict in favor of the plaintiff, and that the exceptions thereto require a reversal. The action is by a domestic corporation, a buyer, against a foreign corporation, the seller, for breach of a contract in writing made by brokers for the parties on the 20th day of February, 1919, by which the defendant agreed to sell and deliver to the plaintiff 3,000 pieces, containing about sixty yards to the piece, of first quality grey cloth at the price of nine cents per yard, 250 pieces to be delivered weekly commencing May first, F. O. B. mill, and payments to be made in installments for each delivery within ten days after delivery. The defendant delivered four of the installments of 250 pieces each, the first on May first and second, the second on May eighth, the third on May fifteenth, the fourth on May twenty-second, and at the same times forwarded to the plaintiff invoices therefor. The payment for the first installment fell due on May twelfth owing to the fact that the eleventh was Sunday, which was after the delivery of the first two installments; but payment therefor was not made until May fourteenth, the day before the delivery of the third installment. Payment

for the second installment fell due on May nineteenth, which was after the delivery of the first three installments, but payment therefor was not made and the plaintiff was three days in default when the defendant delivered the fourth installment. The day after the delivery of the fourth installment the defendant mailed to the plaintiff a statement of the account with respect to the second installment which had not been paid, but no attention was paid thereto. On May twenty-sixth the third installment fell due but was not paid; and on May twenty-seventh or twenty-eighth the defendant mailed to the plaintiff another statement of the account due for the second installment with the request, " Please remit." The contract called for the delivery by the defendant of the fifth installment on May twenty-ninth, but at that time the plaintiff was in default ten days in paying for the second installment with respect to which the defendant had sent two statements in addition to the original invoice to which the plaintiff had paid no attention, and the plaintiff was then in default three days with respect to the payment for the third installment which was due on May twenty-sixth, and for these reasons the defendant withheld delivery of the fifth installment as it had a right to do (Pers. Prop. Law, § 134, subd. 2, as added by Laws of 1911, chap. 571); but it did not give notice to the plaintiff of its reasons therefor and it was not required so to do. On May thirty-first the defendant sent a like statement to the plaintiff with respect to the account due for the third installment. The contract called for the delivery of the sixth installment on June fifth, but that was not delivered. The plaintiff was then seventeen days in default with respect to the payment for the second installment, ten days with respect to paying for the third installment and three days with respect to paying for the fourth installment; and on that day the defendant sent a like second statement of the account past due for the third installment with the request " Please remit." On June twelfth, when by the terms of the contract the seventh installment should have been delivered, the plaintiff was still in default in paying for the second, third and fourth installments. Plaintiff paid for the second installment on June thirteenth, which was twenty-six days late. On June sixth

defendant sent like statements with respect to the account due for the fourth delivery and again on June eleventh, with the request, " Please remit," and again on June fifteenth with the request, " Kindly favor us with your check by return mail, and oblige." On June nineteenth the delivery of the eighth installment was called for by the contract, but it was not delivered. The plaintiff was then in default twenty-four days in paying for the third installment and seventeen days in paying for the fourth installment, and had given no attention to the defendant's requests for payments therefor. On June twenty-sixth the plaintiff paid for the third installment, which was thirty-one days overdue, and for the fourth installment, which was twenty-four days overdue. On the seventh of July the plaintiff wrote to the defendant drawing attention to the contract and to the fact that the last delivery thereunder was on May twenty-second and stating that it was urgently in need of the cloth and would like to know when deliveries would be resumed. On the tenth of July the defendant answered the letter stating that the plaintiff had failed to make any payment on time, and that the plaintiff was frequently notified thereof both verbally and in writing and requested to pay but failed to do so, and that the defendant was justified in not making any further delivery, and that the plaintiff had acquiesced therein for six weeks without complaint and that the defendant, therefore, considered that the contract was abandoned by mutual consent; and further stating that its mill was a contract mill, and it was its policy to have contracts on hand to keep the mill running, and that it was very much embarrassed when goods contracted for were not taken by buyers according to their agreements, and that the contract was to be fully performed by July seventeenth, and defendant considered that the failure of the plaintiff to pay, notwithstanding the fact that its default in making payments was frequently drawn to its attention, and its acquiescence for over six weeks in the defendant's stopping deliveries warranted the defendant in considering the contract canceled as to the deliveries not made. The letter closed by stating that owing to the advance in the market price of the goods immediately after the making of the contract the defendant realized that the cancellation of the contract would

be to its advantage and that for this reason, " as well as on general principles," it did not wish to be arbitrary in the matter and would be glad to consider anything the plaintiff had to say to show why the contract should not be considered canceled.    To this letter the vice-president of the plaintiff replied on July eleventh expressing surprise at the contents of the letter and stating that he had been absent for eight weeks and unable to O. K. the invoices, which was necessary before payment could be made, and that he was unable to ascertain that there had been any verbal request by the defendant for payment or any request other than those consisting of the statements of the account, to which reference has been made, and protesting that the contract could not thus automatically be canceled and requesting the defendant to continue deliveries and promising to anticipate payment for future invoices as, he claimed, had theretofore been the plaintiff's usual custom in its dealings with the defendant for a period of some five years.    Defendant did not reply to that letter.    On the sixteenth of July plaintiff wrote defendant referring to its unanswered letter of July eleventh and stating that it was urgently in need of the goods and that unless immediate deliveries were resumed, it would purchase the goods in the open market for the account of the defendant. To this defendant replied on the nineteenth of July, offering to deliver 2,000 pieces of the cloth for a cash payment according to the then market price of eighteen cents per yard with a discount at the rate of six per cent per annum for payment in cash instead of ten days after delivery, and, in effect, stating that it would do this without prejudice to the plaintiff's threatened suit, evidenced by a letter from its counsel. That ended the negotiations and the action was commenced on September eighth that year.

It was shown that the defendant on May 29, 1919, when the contract called for the delivery of the fifth installment of the goods, had them manufactured at its mill and ready for delivery and that it sold them in the market at eighteen and one-half cents per yard on July twenty-third; and sold the other goods, in so far as it manufactured them, for that price on that date, and that there was a ready market for them at a price in advance of the contract price at all times after

the contract was made and prior to that date. Plaintiff showed that it was able to pay for the goods at all times in question and that it had an average in its bank account between May 29 and August 1, 1919, of $40,000 and that the delay in making payments was due to the fact that the plaintiff's vice-president was on a trip to the Pacific coast, stopping *en route* at various cities, and had left instructions that all invoices for goods delivered but not shipped and held at the mill awaiting shipping instructions, which was the case with respect to the goods not paid for, should be sent to him for his O. K. before the goods were paid for. Plaintiff also showed that the defendant had an average cash balance in its bank account during this period of approximately $130,000. It appears, however, that the annual output of the defendant's mill was 16,000,000 yards, while this contract was for only 180,000 yards. It is argued in behalf of the defendant that it regulated its bank account according to its needs and that it was essential that it should adopt a policy of insisting upon prompt payments for otherwise a large bank balance would not last long. Defendant does not claim to have been financially embarassed but it insists that it had a right to regulate its business in its own way and to require its customers to live up to their contracts.

The only theory on which the recovery can be sustained is that the defendant's acceptance of payment for the first installment two days after it was due and its delivery of the third installment the next day and the delivery of the fourth installment, when the plaintiff was three days in default with respect to payment of the second installment, as matter of law, constituted a waiver of the provisions of the contract with respect to the time for the payment of all subsequent installments. That, I think, does not follow. (*Gardner* v. *Clark*, 21 N. Y. 399.) Defendant thereby of course waived the breaches that had occurred prior to the delivery of the third and fourth installments (*Pipe & Contractors Supply Co.* v. *Mason & Hanger Co.*, 181 App. Div. 317; *McDowell* v. *Starobin Electrical Supply Co., Inc.*, 190 id. 676), and no longer had the right arbitrarily to terminate the contract on account thereof and before that could be done, it would have been necessary for the defendant to have demanded payment for

the past due installments within a reasonable time; but the waiver of that breach was no assurance, as matter of law, to the plaintiff that it would be permitted to disregard the provisions of the contract with respect to payments subsequently accruing for other installments. It must be borne in mind that this is an action at law predicated on full performance by the plaintiff save as *prevented* by defendant and no waiver was alleged. Therefore, there could not be a recovery if plaintiff was guilty of a material breach of the contract. (*McDowell* v. *Starobin Electrical Supply Co., Inc., supra.*)

On the trial the complaint was amended by alleging a waiver by accepting the payments of the overdue installments and by not giving notice to plaintiff fixing a time for payment and notifying it that the contract would be canceled if payments were not so made. There was no waiver by accepting what was past due and it cannot be held as matter of law that defendant was under an obligation to give such a notice. Notice or its equivalent is only required in cases of rescission. (Pers. Prop. Law, §§ 142, 146, as added by Laws of 1911, chap. 571; *Rubber Trading Co.* v. *Manhattan Rubber Mfg. Co.*, 221 N. Y. 120.) The defendant did not plead rescission but merely justification under subdivision 2 of section 126 (as added by Laws of 1911, chap. 571) for not proceeding further, or in other words for not performing in so far as it had not performed. (See Williston Sales, p. 980; *Daley* v. *People's Bldg., etc., Assn.*, 178 Mass. 13; *Anvil Mining Co.* v. *Humble*, 153 U. S. 540.) The plaintiff made no attempt to explain its delay in making the payment until after the defendant ceased to make deliveries and claimed that the contract had been terminated; and the explanation then made was wholly insufficient, as matter of law at least, to justify or excuse its failure to pay as required by the contract. In view of the provisions of subdivision 2 of section 126 of the Personal Property Law, as construed in *Helgar Corporation* v. *Warner's Features* (222 N. Y. 449), I am of opinion that a question of fact was presented as to whether plaintiff's breaches of the contract were so material that the defendant was justified in refusing to proceed further with the contract.

The judgment and order should, therefore, be reversed, with costs to appellant, and the special and general verdicts

in favor of the defendant reinstated and judgment directed to be entered thereon in favor of defendant, with costs.

PAGE and MERRELL, JJ., concur; CLARKE, P. J., and SMITH, J., dissent.

SMITH, J. (dissenting):

The action is brought by a purchaser against the seller to recover damages for the breach of a contract to sell some cotton grey cloth. The contract provided for the sale of 3,000 pieces, of which 1,000 pieces were delivered. Thereafter the defendant refused to make further deliveries and the plaintiff sues to recover his damages as the difference between the contract price of the goods in question and the market price which the plaintiff was required to pay in order to procure the same. The defendant justifies its refusal to deliver the balance of the goods contracted for on the ground that prompt payment was not made for the installments which were in fact delivered. The facts of the case show that upon the first installment delivered the payment was due upon May twelfth and was made upon May fourteenth. Upon the second installment delivered the payment was due upon May nineteenth and was made upon June thirteenth. Upon the third installment delivered payment was due upon May twenty-sixth and was paid upon June twenty-sixth and upon the fourth installment payment was due upon June second and was made upon June twenty-sixth. The fourth installment was delivered upon May 22, 1919. At that time the amount of the second installment was three days overdue. The fifth installment was deliverable under the contract upon May twenty-ninth. At that time the plaintiff had not paid the bill for the second installment which was ten days overdue, nor for the third installment which was three days overdue. Although upon June twenty-sixth payments had been made in full for all the installments delivered and a demand was made for further deliveries, the defendant refused to make further deliveries and for damages caused by this refusal this action is brought.

At no time did the defendant give any notice to the plaintiff that the contract was abandoned or rescinded and its

only communication to the plaintiff was a letter written upon June 15, 1919, which contained the statement of the account and stated: "Kindly favor us with your check by return mail, and oblige." The statement accompanying the letter was a statement of payments due for the third and fourth installments which were overdue respectively sixteen and nine days.

At the close of the evidence the trial judge submitted to the jury two specific questions which they were directed to answer: *First,* "Was the breach of contract on the part of the plaintiff so material as to justify the defendant in refusing to proceed further in delivering goods under the contract on and after May 29, 1919?" *Second.* "Irrespective of your answer to the former question, and assuming that the plaintiff is entitled to recover, what is the amount of the damages which the plaintiff is entitled to recover?" The jury answered the first question in the affirmative and as to the second question assessed the damages at $8,737. It was stipulated that after the answer to those specific questions the court might direct a general verdict as upon a reserved motion made by both parties for a directed verdict. The court thereupon directed a general verdict in behalf of the plaintiff for the amount specified in the answer to the second question submitted to the jury.

Whatever may have been the rule under former decisions of the courts of the State, section 126 of the Personal Property Law (as added by Laws of 1911, chap. 571) now states the conditions upon which a party has the right to refuse further to perform a contract. Under subdivision 2 the rule is stated: "Where there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right

to treat the whole contract as broken." This subdivision was interpreted by the Court of Appeals in the case of *Helgar Corporation* v. *Warner's Features* (222 N. Y. 449). Judge CARDOZO in writing the opinion states: " The statute thus establishes a like test for vendor and for vendee. The earlier cases may not be wholly uniform [Citing cases]. We do not need to reconcile them. * * * We have established a new test, which weighs the effect of the default, and adjusts the rigor of the remedy to the gravity of the wrong. ' It depends in each case on the terms of the contract and the circumstances of the case ' whether the breach is ' so material ' as to affect the contract as a whole." The opinion further reads: " The answer to that question must vary with the facts (Williston on Sales, p. 810). Default in respect of one installment, though falling short of repudiation, may under some conditions be so material that there should be an end to the obligation to keep the contract alive. Under other conditions, the default may be nothing but a technical omission to observe the letter of a promise [Citing cases]. General statements abound that, at law, time is always of the essence [Citing cases]. For some purposes this is still true. The vendor who fails to receive payment of an installment the very day that it is due, may sue at once for the price. But it does not follow that he may be equally precipitate in his election to declare the contract at an end [Citing cases]. That depends upon the question whether the default is so substantial and important as in truth and in fairness to defeat the essential purpose of the parties. Whatever the rule may once have been, this is the test that is now prescribed by statute. The failure to make punctual payment may be material or trivial according to the circumstances. We must know the cause of the default, the length of the delay, the needs of the vendor, and the expectations of the vendee. If the default is the result of accident or misfortune, if there is a reasonable assurance that it will be promptly repaired, and if immediate payment is not necessary to enable the vendor to proceed with performance, there may be one conclusion. If the breach is willful, if there is no just ground to look for prompt reparation, if the delay has been substantial, or if the needs of the vendor are urgent so that continued per-

formance is imperilled, in these and in other circumstances, there may be another conclusion. Sometimes the conclusion will follow from all the circumstances as an inference of law to be drawn by the judge; sometimes, as an inference of fact to be drawn by the jury."

There is not the slightest evidence in this case which would justify finding that the delay in punctual payment was material. There is no need of the vendor shown, by reason of which the few days' delay in payment will cause embarrassment. There is not the slightest pretext of any fact justifying a finding of willful neglect on the part of the vendee. Moreover, the fourth installment was delivered while the bill for the second installment was three days over due. This was clearly a waiver of strict performance on the part of the plaintiff, and while a waiver acts *in presenti* only, the court will not thereafter enforce a forfeiture without some notice of intention on the part of the vendor thereafter to require strict performance. This rule is forcibly stated in the case of *Rathbone* v. *Forsyth* (171 App. Div. 26). That case arose upon the right to declare the principal amount due upon a mortgage for failure to pay an installment, and the rule of law held was that " Acceptance of a payment by a mortgagor, after the right to a forfeiture exists, prevents an election to take advantage of the default, unless timely notice is subsequently given that strict performance of the terms of the contract will be required." Authorities were therein cited to show " That where a party intends to insist upon a forfeiture he must do no act inconsistent with that right, and that if the forfeiture is to be enforced on account of a nonpayment of money, an acceptance of money after a right to the forfeiture exists prevents the election to take advantage of the default until timely notice is given that strict performance is required." (See, also, *Pipe & Contractors Supply Co.* v. *Mason & Hanger Co.*, 181 App. Div. 317.)

Without any evidence of the materiality of the plaintiff's breach of the contract other than the few days' delay in the making of the first four payments, and without any notice of an intention to require strict performance of the contract, after strict performance had been once waived by delivery of

the fourth installment while the payment of the second install-
ment was three days over due, in my judgment the question
of the materiality of the plaintiff's breach became a question
of law and was properly ruled by the trial judge and the
judgment should be affirmed, with costs.

CLARKE, P. J., concurs.

Judgment and order reversed, with costs, special and general
verdicts reinstated and judgment directed thereon in favor
of defendant, with costs.